IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 08-cv-02446-WDM-CBS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JAMES F. HOLMES,

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

Miller, J.

      This matter is before me on Defendant James F.  Holmes's ("Holmes") Motion to Dismiss (Docket No. 7).  After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required.  For the reasons that follow, the motion shall be denied.

<u>Background</u>[1]

      This case is a civil action filed by the United States ("the Government") to determine whether Holmes is personally liable to the United States for tax liabilities assessed against his wholly owned entity, Colorado Gas Compression, Inc. ("CGCI"). According the complain (Docket No. 1), in September 2001 and again in July 2005, the United States Tax Court entered a decision establishing tax liabilities against CGCI for

---

[1] All relevant facts are taken from the Complaint or the Government's Response to the Motion to Dismiss.

the tax years 1994, 1995, and 1996 for gain realized from the disposition of corporate

assets.  Based on these decisions, a delegate of the Secretary of the Treasury made

assessments against CGCI.  Notices of the assessments were timely sent to CGCI.

CGCI, however, failed to pay the outstanding federal liability and there remains a total of

$2,655,276.34, plus accrued but un-assessed interest and other statutory additions,

outstanding.  Meanwhile, beginning in 1995, while CGCI was in the process of ceasing

operations, CGCI sold major assets and made cash and/or cash equivalent distributions

to Holmes at least totaling $3,671,610.00.  The Government alleges that the

distributions were made with the knowledge that federal tax liability existed.  It also

alleges that the distributions left CGCI defunct and insolvent.  Therefore, the

Government seeks to establish Holmes's liability for the outstanding federal taxes.

The Government brings four claims for relief, all based on Colorado law.  The

first two allege that the transfers made from CGCI to Holmes were fraudulent in violation

of Colo. Rev. Stat. § 38-8-105 and 106, which are part of the Colorado Uniform

Fraudulent Transfer Act ("CUFTA").  The third claim alleges that Holmes is liable to the

United States, a creditor of CGCI, as a shareholder who received distributions from a

liquidating corporation pursuant to Colo. Rev. Stat. § 7-114-108.  Finally, claim four

alleges that Holmes is liable for the tax assessments because he approved and

accepted unlawful distributions from CGCI with the knowledge that they were unlawful,

in violation of Colo. Rev. Stat. § 7-108-403.

<u>Standard of Review</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)[2] alleges that the

complaint fails "to state a claim upon which relief can be granted."  A complaint must be

dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct.

1955, 1974 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, . . . a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level." *Id.*  The court must accept as true all well-pleaded facts and

construe all reasonable allegations in the light most favorable to the plaintiff. *United*

*States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

<u>Discussion</u>

As an initial matter, I address Holmes's request for judicial notice that the

Government is not proceeding under 26 U.S.C. § 6901, the federal statute setting forth

a summary procedure by which the Government can establish transferee liability.  The

Government agrees that it is not proceeding under 26 U.S.C. § 6901, but rather relying

on the CUFTA to establish Holmes's transferee liability.  Under these circumstances,

the Government may proceed  under either the summary procedure in section 6901 or

applicable state law. *See Commissioner v. Stern*, 357 U.S. 39, 42 (1958) (noting that

---

[2]  Holmes's motion to dismiss states that the motion is made pursuant to Fed. R. Civ. P. 12(b)(5), insufficient service of process. (*See* Docket No. 7 at 1.)  In the reply, however, Holmes acknowledges that this was a typographical error and that the motion is made pursuant to Fed. R. Civ. P. 12(b)(6).

the predecessor to section 6901, 26 U.S.C. § 311, "neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes"); *McGraw v. Commissioner*, 384 F.3d 965, 976 (8th Cir. 2004) ("When a taxpayer . . . transfers its assets to its shareholders, leaving it unable to pay its federal taxes, the federal government may be able to collect those taxes from the shareholder pursuant to 26 U.S.C. § 6901.  Section 6901 is merely procedural, however, and the existence and extent of a shareholder's liability is determined by state law."); *Scott v. Commissioner*, 236 F.3d 1239, 1241 (10th Cir. 2001) ("Although § 6901 provides a procedural mechanism whereby the IRS can assess transferee liability, it does not define substantive liability.  Rather, we rely on applicable state law to determine whether a person is liable as a transferee of assets."); *United States v. Westley*, 7 Fed App'x 393, 399 (6th Cir. 2001) (unpublished) ("Thus, while the timely invocation of § 6901 might have assisted the Government in its collection efforts . . . , the Government's failure to proceed under that section does not vitiate the substantive liability of transferees if such liability exists under state law.").  Indeed, the Tenth Circuit has determined that "the collection procedures contained in § 6901 are not exclusive and mandatory, but are cumulative and alternative to the other methods of tax collection recognized and used prior to the enactment of § 6901 and it statutory predecessors." *United States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972).  Therefore, I conclude that there is no cause for concern or reason to take judicial notice that the Government is proceeding under the CUFTA rather than section 6901.

Turning now to Holmes's arguments for dismissal, Holmes first argues that because the Government is not pursuing its rights under 26 U.S.C. § 6901, but rather

relying solely on state law, the Government is subject to the applicable state statutes of

limitations.  The rules governing the application of state statutes of limitation in actions

involving the federal government are informed by two Supreme Court cases: *United*

*States v. Summerlin*, 310 U.S. 414, 416 (1940) and *Guaranty Trust Co. of N.Y. v.*

*United States*, 304 U.S. 126, 132 (1938).  *See Bresson v. Commissioner*, 213 F.3d

1173, 1175 (9th Cir. 2000).  In *Summerlin*, the Supreme Court noted that "[i]t is well

settled that the United States is not bound by state statutes of limitation or subject to the

defense of laches in enforcing its rights."  310 U.S. at 416 (citations omitted).  "The

same rule applies whether the United States brings its suit in its own courts or in a state

court."  *Id.* (citation omitted).  The *Summerlin* Court further concluded that "[w]hen the

United States becomes entitled to a claim, acting in its governmental capacity and

asserts its claim in that right, it cannot be deemed to have abdicated its governmental

authority so as to become subject to a state statute putting a time limit upon

enforcement."  310 U.S. 414, 417 (1940).  Although articulating a broad rule, the

*Summerlin* Court implicitly limited the rule by citing with approval the *Guaranty Trust*

case, decided two years prior.  *Id.* at 416.  In *Guaranty Trust*, the Court concluded that a

New York statute of limitations precluded a suit by the United States because the

government was assigned the rights after the statute of limitations had already run on

the action.  304 U.S. at 141–42.  In so concluding, the Court determined that precluding

the claim "deprives the United States of no right, for the proof demonstrates that the

United States never acquired a right free of a pre-existing infirmity, the running of

limitations against its assignor, which public policy does not forbid."  *Id.*  As the Ninth

Circuit has explained:

> Taken together, *Summerlin* and *Guaranty Trust* suggest two countervailing principles.  On the one hand, if the United States comes into possession of a valid claim, that claim cannot be "cut off" later by a state statute of limitations.  On the other hand, if a claim *already has become infirm* (for example, when a limitations period expires) by the time the United States acquires the purported right, the rule of *Summerlin* will not operate to revive the claims.

*Bresson*, 213 F.3d at 1176 (emphasis in original).

Half a century later the Supreme Court provided further limitation to the *Summerlin* rule in *United States v. California*.  *See* 507 U.S. 746, 757 (1993).  In concluding that California's statute of limitations barred suit by the United States to recover taxes paid by one of its subcontractors and reimbursed by the Government, the Court distinguished *Summerlin* on two grounds: in *Summerlin* (1) "the right at issue was obtained by the Government through, or created by, a federal statute" and (2) "the Government was proceeding in its sovereign capacity."  *Id.*  The Court went on to restate the *Summerlin* rule, but looked to *Guaranty Trust* to conclude that the Government was not entitled to evade California's statute of limitations.  *Id.* at 757–58.  The Court concluded that the Government only acquired the right as a subrogee of its subcontractor and because it failed to bring suit prior to statute of limitations deadline, it "was not subrogated to 'a right free of a pre-existing infirmity.'" *Id.* at 758–59 (quoting *Guaranty Trust*, 304 U.S. at 142).

Given this controlling Supreme Court precedent, the Ninth Circuit has determined that the United States is not subject to the extinguishment provision contained in California's version of the Uniform Fraudulent Transfer Act.  *See Bresson*, 213 F.3d at 1178–79.  The court determined that because the claim extinguishment provisions operate just as a statute of limitations does—to cause "a valid, fully accrued right of

action to lose its vitality through the passage of time"—the rule of *Summerlin* applies.

*See id.* at 1178.  The Ninth Circuit determined that *California* did not preclude

application of the *Summerlin* rule as "the Government's underlying right to collect money

in this case clearly derives from the operation of federal law (i.e., the Internal Revenue

Code)" and "in its efforts to collect taxes, the United States unquestionably is acting in

its sovereign capacity."  *Id.*  Therefore, the court concluded that "[b]ecause the United

States is here acting in its sovereign capacity in an effort to enforce rights ultimately

grounded in federal law, the rule of *Summerlin* will not allow the 'extinguishment' of a

valid, fully accrued claim by the IRS brought under the CUFTA."  *Id.*  The Tenth Circuit

has also indicated that the extinguishment provisions in a fraudulent transfer act are not

applicable to the United States.  *See United States v. Spence*, 242 F.3d 392, 2000 WL

1715216 (10th Cir. 2000) (unpublished)[3] (concluding that the statute of limitations in

New Mexico's fraudulent transfer act did not apply to the United States' claim to set

aside a fraudulent transfer to collect tax assessments).

In this case, with respect to the First and Second Claims for Relief, brought under

the CUFTA, Holmes argues that the claim extinguishment provision, Colo. Rev. Stat. §

38-8-110,[4] bars the claims because they were filed more than four years after the

Government became aware of the allegedly fraudulent transfers.  Section 38-8-110

---

[3]  Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1(A).

[4]  Although Holmes's motion cites to Colo. Rev. Stat. § 38-8-108, which sets forth the remedies for creditors under the CUFTA, the correct statute regarding extinguishment of claims is Colo. Rev. Stat. § 38-8-110.

provides that cause of action under the CUFTA are "extinguished unless action is brought" generally within four years after the transfer is made or the obligation incurs.  I agree with the Ninth Circuit that the United States is not subject to this time limitation. *See Bresson*, 213 F.3d at 1178–79.  The effect of the claim extinguishment provision is exactly what the Supreme Court sought to avoid in *Summerlin*—a state law invalidating a claim of the United States merely due to the passage of time.  *See Summerlin*, 310 U.S. at 417.  Indeed, in such a case, the statute "transgresse[s] the limits of state power."  *Id.*

Holmes's attempts to distinguish *Bresson* are unpersuasive.  Contrary to Holmes's assertion, in this case the United States *is* asserting federal rights in its sovereign capacity, just as it was in *Bresson*.  *Id.*  In fact, the circumstances of this case are essentially identical to those in *Bresson* except that in *Bresson* the United States was proceeding under 26 U.S.C. § 6901 rather than state law.  As discussed above, however, such distinction is irrelevant because each is merely an alternative by which the Government may establish transferee liability.  Indeed, in either case the Government is seeking to collect taxes, clearly a function of federal law, in its sovereign capacity.  Therefore, I conclude that the claim extinguishment provision of the CUFTA does not bar the United States' claims in this case.

Similar to his argument regarding the claim extinguishment provision, Holmes argues that the Fourth Claim for Relief, based on breach of fiduciary duty, is barred by Colo. Rev. Stat. § 13-80-101(f), which provides that such causes of action "shall be commenced within three years after the cause of action accrues, and not thereafter." Holmes again tries to avoid the *Summerlin* rule by arguing that the United States is not

acting in its federal capacity by pursuing a claim under Colo. Rev. Stat. § 7-108-403 but, rather, is acting as a creditor and, therefore, is subject to the rule set forth in *California*. This argument, however, is meritless.  Just as in Claims One and Two, the United States is again seeking, in its sovereign capacity, to collect deficient taxes assessed against CGCI pursuant to federal law.  Therefore, the *Summerlin* rule applies and the United State is not barred by the Colorado statute of limitations.

Finally, with respect to the Third Claim for Relief, Holmes argues that the statute cited by the Government, Colo. Rev. Stat. § 7-114-108, was repealed prior to the initiation of this lawsuit.  The Government responds that the statute was simply renumbered and currently appears in Colo. Rev. Stat. § 7-90-913.  Holmes appears to concede that the issue is resolved by the Government's correct citation in the response brief.  (*See* Reply at 6 ("Assuming that Plaintiff's Response is sufficient to amend with a reference to C.R.S. § 7-90-913 its pleadings as to C.R.S. § 7-114-108 (repealed 2006), that claim is nonetheless barred by the statute of limitations.").)  Therefore, I conclude that the Government's response is sufficient to avoid dismissal for its incorrect statutory citation.[5]  Finally, I conclude that the Claim Three is not barred by the applicable state

---

[5] I note that the complaint fully sets forth the factual basis for Claim Three and provides a valid legal theory on which relief is appropriate.  This is not a case where the incorrect citation resulted in the failure to put the defendant on notice of a claim.  *See Dunn v. Ewell (In re Santa Fe Downs, Inc.)*, 611 F.2d 815, 816 (10th Cir. 1980) (denying the plaintiff's attempts to introduce evidence related to an un-cited section of the Bankruptcy Act).  Furthermore, the issue is being resolved at an early stage of the proceeding and, therefore, Holmes is in no way deprived of his ability to defend against the claim.  *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) ("[A] plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense upon the merits." (quoting 4 C. Wright & A. Miller, *Federal Practice &*

statute of limitations for the same reasons as articulated with respect to Claim Four

*supra*.

     Accordingly, it is ordered:

1.     Defendant James F. Holmes's Motion to Dismiss (Docket No. 7) is denied.

2.     The Government is ordered to file an amended complaint setting forth the correct

statute under which it brings Claim Three.


DATED at Denver, Colorado, on June 25, 2009.

     BY THE COURT:


     s/ Walker D. Miller
     United States Senior District Judge

---

*Procedure* § 1219 at 194 (1990))).