IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 08-cv-02446-WDM-CBS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JAMES F. HOLMES,

      Defendant.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

---

Miller, J.

      This matter is before me on the Motion for Summary Judgment (ECF No. 51) filed by Plaintiff United States of America. Defendant James F. Holmes opposes the motion. I have reviewed the parties' written arguments and the evidence submitted with the briefs and conclude that oral argument is not required. For the reasons set forth below, Plaintiff's motion will be granted in part, denied in part, and denied as moot in part.

<u>Background</u>[1]

      This is an action by the United States seeking to recover unpaid corporate tax obligations from the corporation's sole shareholder. The taxpayer was a company called Colorado Gas Compression, Inc. ("CGCI"), and the tax obligation is for tax years 1994, 1995, and 1996.

      CGCI was formed as a Colorado corporation in 1977 and was administratively

---

[1]The facts herein are drawn from the affidavits and other evidence submitted with the parties' briefs and are undisputed unless otherwise noted.

dissolved by the Colorado Secretary of State on July 31, 2005.  During the relevant time period Defendant Holmes was the sole shareholder and was an officer and director of CGCI.  In 1997, CGCI was notified of an audit of its 1994-1996 federal corporate income tax liabilities.  After the audit, the IRS issued a "Notice of Deficiency," dated July 28, 1998, which stated that CGCI was liable for the following federal income tax deficiencies:

> 1994 - $52,073
>
> 1995 - $709,939
>
> 1996 - $161,037
>
> Total - $932,049

Notice of Deficiency, Exh. A-9 to Def.'s Resp., ECF No. 59-9.  These tax liabilities were incurred as a result of CGCI's disposition of most or all of its assets.

Defendant apparently contested this determination and the case was appealed up to the Tenth Circuit.  *Colorado Gas Compression, Inc., v. Comm'r*, 366 F.3d 863 (10th Cir. 2004).  Ultimately, the United States Tax Court issued a final determination confirming CGCI's tax liability for these amounts.  *Colorado Gas Compression, Inc., v. Comm'r,* Docket No. 17251-98 (T.C., July 20, 2005), Exh. A-10 to Def.'s Resp. ECF No. 59-10.  The United States contends that with interest and penalties, the amount now owed is as follows:

> 1994 - $165,109.78
>
> 1995 - $4,000,866.69
>
> 1996 - $775,746.47
>
> Total - $4,941,722.94

Defendant disputes that the United States is entitled to interest or penalties, which is primarily a legal, not factual, issue and is discussed further below.

It is undisputed that during the same time period, CGCI made distributions in cash to Defendant in the following amounts:

1995 - $902,000

1996 - $1,851,704

1997 - $240,000

1998 - $572,809

1999 - $75,694

2000 - $1,189

2002 - $27,714

Total - $3,671,110

The United States seeks to recover these amounts from Defendant in satisfaction of CGCI's tax liability under several legal theories.  There may be an issue of fact as to whether all of these distributions were reported on CGCI's federal corporate income tax returns or on the Forms K-1 issued to Defendant by CGCI.  They were likely disclosed or discovered during the audit, however.  There is no evidence that Defendant gave CGCI any consideration for these distributions.

According to evidence and statements by Defendant and his corporate accountant, CGCI liquidated its assets before 1997, when the company had essentially ceased major operations, although it continued to engage in minimal business activities through 1998-2000.  The distributions to Defendant were intended to wind down the business in a tax advantageous way and were in accordance with the advice of the accountant.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material

3

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Discussion

The government asserts three legal theories[2] under which it contends it is entitled to obtain payment for CGCI's tax liability from the distributions to Defendant: (1) the distributions were part of a liquidation that can be claimed by a creditor pursuant to C.R.S. § 7-90-913(1)(b); (2) the distributions are recoverable under C.R.S. § 7-108-403 because CGCI was insolvent when they were made; and/or (3) the distributions amount to a fraudulent transfer, which the government may recover pursuant to C.R.S. § 38-8-106.

1.   Distribution to a Shareholder in Liquidation

The government's third claim for relief in the Amended Complaint is that "as the owner of a dissolved corporation who received assets in its liquidation, James F. Holmes is liable to the United States, a creditor of the corporation, in an amount up to the total value of the distributions or the amount of the federal income tax liabilities, plus interest, whichever is less."  Amended Complaint, ECF No. 23, ¶ 28.  Colorado's statute regarding actions against dissolved entities provides that a creditor's claims may be enforced (a) against "the dissolved domestic entity to the extent of its undistributed assets" and (b) "[i]f assets have been distributed in liquidation, against an owner of the dissolved domestic entity; except that an owner's total liability for all claims under this section shall not exceed the total value of assets distributed to the owner, as such value is determined at the time

---

[2]*See Comm'r Internal Rev. v. Stern*, 357 U.S. 39, 44 (1958) (transferee's substantive liability for transferor's income tax deficiency determined under state law).

of distribution." C.R.S. § 7-90-913(1).[3]

The United States argues that it is a creditor of CGCI, as defined by the Colorado Uniform Fraudulent Transfer Act in C.R.S. § 38-8-102(5)[4], which Defendant does not dispute, and that Defendant is the sole owner of CGCI, a dissolved corporation. The United States contends that under C.R.S. § 7-90-913(1)(b), "the creditor need only show that the owner/shareholder received distributions from a liquidating corporation, and that a debt is owed to it by the corporation" and that the owner is liable regardless of whether the distribution was made at a time that the corporation could pay its debts. U.S. Mot. for Summ. J., ECF No. 51, at 8. The statute limits liability only to the amount of the distribution. The government asserts that because Defendant received assets in the liquidation of his company, he is personally liable for the debt, which was "created by his decision to liquidate the assets of the corporation and distribute the proceeds to himself." *Id.* The amount sought is $3,671.610, the total value of the assets received as distributions from 1994, when the tax liability was first incurred, and thereafter.

In response, Defendant argues that the statute applies only to assets distributed after dissolution. He contends that since CGCI was not officially dissolved until 2005, distributions he received before then cannot be applied to the corporation's debt.

---

[3]The statute provides a procedure whereby a dissolving entity may give notice to creditors and dispose of known and unknown claims by providing notice and setting forth dates and other relevant information. C.R.S. §§ 7-90-911 & 912. Since there is no evidence that CGCI followed these procedures, I do not consider their effect.

[4]Defining creditor as any person who has a claim. A "claim" is further defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." C.R.S. § 38-8-102(3).

Defendant provides no legal authority in support of his reading of the statute and I do not read the statute so narrowly.  Indeed, nothing in the plain language of section 913 specifies whether a creditor may recover assets received by owners in liquidation before or after the official act of dissolution.  Moreover, this would be contrary to the purpose of the dissolution statute, which, as noted by Defendant, is that "shareholders [should] not receive corporate assets on dissolution unless and until creditors have been paid or adequate provision for such payment has been made."  *Ficor, Inc. v. McHugh*, 639 P.2d 385, 392 (Colo. 1982).  Clearly, the United States as a creditor was not paid, nor was any provision made for payment.  Under Defendant's reading, all a corporation and its shareholders would have to do to evade a corporate debt is delay official dissolution until all the assets of the company have been distributed.  That would impair contracts and threaten creditors and I decline to give the statute such a reading.

Defendant also argues that, since the company continued to operate through 2001, the government cannot show that the distributions were intended to liquidate the company.  In response, the government points to evidence from Defendant's accountant, who authenticated in his deposition a letter to the IRS in which he stated, "you will see that most sales and disposition of [CGCI's] assets had all occurred prior to 1997 by which time the Company had 'run its course' . . . . There was some minimal gas investment activity and cattle investment activity in 1998-2000 after which the Company was dissolved."  Laurion Dep., at 31 & Letter from James Laurion CPA to IRS dated Aug. 22, 2005, Exh. 1 to U.S. Reply, ECF No. 60-1.  The accountant characterized this activity from 1998-2000 as "extraordinarily minimal." Laurion Dep., at 32.  Defendant also stated in his deposition that CGCI's assets were sold, apparently over a two year period, and the proceeds distributed

6

to him, timed in accordance with his accountant's instructions.  Holmes Dep., Exh. A to U.S. Mot. for Summ. J., ECF No. 51-1 at 17-18, 20; see also *id.*, at 24 ["Q: [A]s of about 2002, substantially all of the assets or all of the cash from the proceeds of the liquidation of Colorado Gas had been distributed to you; is that correct? A: Correct."].

In support of his argument that the distributions were not part of a liquidation of the company, Defendant and his accountant submit affidavits in which they assert that "none of the Distributions was made incident to any plan to liquidate CGCI" Laurion Aff., ECF No. 59-15, ¶ 20, and "At no time during which CGCI made the Distributions did I take any action, nor did I expect to, liquidate CGCI," Holmes Aff., ECF No. 59-14, ¶ 14.  I need not credit the statements in these affidavits, which are in direct conflict with the sworn deposition testimony of these individuals where they described the process of liquidating the company's assets before 1997, the cessation of nearly all business operations by 1997, and making planned distributions of the company's liquidated funds to Defendant as the sole shareholder.  As discussed below, I conclude that the statements should be excluded under the sham affidavit doctrine.

In determining the existence of material facts for the purposes of summary judgment, a court may disregard an affidavit that conflicts with the affiant's prior deposition testimony if the court determines the affidavit constitutes an effort to create a sham issue of fact.  *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).  "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."

7

*Id.* Moreover, "conclusory and self-serving affidavits are not sufficient" to create a genuine issue of material fact. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Here, there is nothing to indicate that Defendant and his accountant were not cross-examined, that they did not have access to relevant evidence or that new evidence has been discovered, or that the earlier testimony reflects any confusion that needed to be clarified by affidavit. Indeed, the earlier statements, particularly by Defendant's accountant, are unequivocal regarding how the business concluded during the relevant time period. Defendant may not now create a genuine issue of fact by conclusorily averring that the events described above did not amount to a wind-up and liquidation of CGCI. Although it took several years to finally officially dissolve the corporation and litigation over the debt continued until after dissolution, I see nothing in the statute that prevents the government from reaching CGCI's assets as distributed to the Defendant.

Because I conclude that Defendant is personally liable to the United States for CGCI's tax deficiency under section 913, I do not address the government's alternative arguments for imposing such liability.

2.    Amount Owed

Defendant also disputes the amount owed at this point. Defendant argues that the Tax Court only found that the government was entitled to the amount of the tax liability (i.e., $923,049), not interest and penalties going back to 1994. He argues that the government's entitlement to interest must be determined under state law, not federal law, and that the failure of the government to seek interest in the Tax Court precludes collection of interest, citing *Voss v. Wiseman*, 234 F.2d 237 (10th Cir. 1956). He contends that the applicable state law permits interest on moneys "after they are wrongfully withheld or after they

8

become due to the date of payment or to the date judgment is entered, whichever first occurs." C.R.S. § 5-12-102(1)(b). He argues that no funds were "wrongfully" withheld because the government did not make a demand until the filing of this lawsuit. In response, the government argues that *Voss* is distinguishable and that under either state or federal law the United States is entitled to interest in some amount.

*Voss* concerned an action to recover interest on the value of assets received by transferees of a dissolved corporation, where those assets were less than the corporation's tax deficiency. 234 F.2d 237. The Tenth Circuit first noted that "if the transferee has received sufficient assets, he is liable not only for the delinquent tax of the transferor but also for the accrued interest." *Id.* at 140. As *dicta*, the *Voss* court then observes that "ordinarily, if claim had been made, the [transferees] would be responsible for interest on the value of the assets received from . . . the date of the deficiency assessment and notice thereof, to the date of payment." *Id.* However, in *Voss*, the court concluded that no claim had been made for interest and none allowed; since the Tax Court's decision was final, the commissioner could not thereafter make an assessment for interest. *Id.*

I disagree with Defendant that, pursuant to *Voss*, the failure of the Tax Court to identify an award of interest in its decision is fatal to the government's claim to interest and penalties. The most recent decision of the Tax Court is limited to one issue after remand from the Tenth Circuit; the Notice of Deficiency clearly indicates the government's intent to apply interest and penalties. Notice of Deficiency, Exh. A-9 to Def.'s Resp., ECF No. 59-9 ( "Any unpaid liability will continue to be charged interest."). Moreover, according to more recent Tenth Circuit authority, it appears that interest is generally not determined until after the Tax Court has assessed a deficiency, as it did here. *Anthony v. United States*, 987

9

F.2d 670 (10th Cir. 1993) ("The Tax Court is a court of limited jurisdiction and is not empowered to decide general questions relating to interest.") (citing *Comm'r v. McCoy*, 484 U.S. 3, 7 (1987)).

I turn, then, to the issue of which law, state or federal, I apply in determining the government's entitlement to interest, the rate of interest, and at what point interest began to accrue. It appears to be fairly well established that where the value of assets transferred exceeds the transferor's total tax liability, including penalties and interest, the transferee is liable for the entire amount of the deficiency and the amount of interest is prescribed by federal law, *i.e.*, 29 U.S.C. § 6601. 14A MERTENS LAW OF FEDERAL INCOME TAXATION § 53:41 (2011) (citing, *inter alia*, *Lowy v. Comm'r Internal Rev.*, 35 T.C. 393 (T.C. 1060)). If the transferee receives less than the transferor's tax liability, state law determines the calculation of interest. *Id.* The government argues that in the years the taxes were owed, Defendant received distributions in excess of the tax liability and so federal law applies. It is undisputed, however, that the total amount now sought by the government exceeds the total amount of distributions made from 1994 to 2002 to Defendant, which complicates the issue.

It appears there are two separate time periods during which interest could be calculated and awarded: (1) beginning with the time of the transfer to the time that the transferee received notice of the deficiency; and (2) after receipt of the notice of the deficiency (here, in July 1998) until judgment. There is some authority to support the conclusion that in these circumstances, the federal interest rate and statute would apply to the time after the Notice of the Deficiency was received, while state law might provide for interest from the date of transfer until the Notice of Deficiency. See *Stansbury v.*

10

*Comm'r of Internal Rev.*, 102 F.3d 1088, (10th Cir. 1996). In *Stansbury,* another case concerning transferee liability for the transferor's tax deficiencies, the parties stipulated to the deficiency and to the transferees' liability for interest from the date of the notice of liability. The transferees disputed, however, that they were responsible for interest on the transferred assets from the date of the transfer of the assets until they were notified of the transferor's tax obligations, citing *Voss*. The issue was submitted to the Tax Court and appealed to the Tenth Circuit. The *Stansbury* court distinguished *Voss* by noting that the transferees in *Stansbury* knew of the transferor's tax liability before the transfer occurred; in *Voss*, the transferee was unaware of the taxes owed until after the transfer of the assets. The parties in *Stansbury* agreed that the Commissioner was entitled to "collect from them, as transferees of [transferor's] assets, the unpaid income tax liability of [transferor] to the extent of the assets received." *Stansbury*, 102 F.3d at 1091. The transferees also agreed "that they are personally liable for interest on the assets received by them from [transferor] from the date of the notices of transferee liability until the date of payment." *Id.* Construing *Voss* and *Comm'r of Internal Rev. v. Stern*, 357 U.S. 39 (1958), the Tenth Circuit determined that the transferees' liability for interest on the assets received by them from the date of transfer to the date of receipt of notice of the tax liability should be determined under state law.

The parties here agree the applicable state statute would be C.R.S. § 5-12-102(a), which provides for interest to creditors when money or property "has been wrongfully withheld . . . from the date of wrongful withholding to the date of payment or to the date judgment is entered." The government argues that it is entitled to interest on the tax liability from the date it first arose in 1994 under federal law; alternatively, it argues for the same

11

amount under state law.   It does not, however, provide any analysis for why it was "wrongful" of Defendant to retain the distributions from 1994-1997 when the Notice of Deficiency was not issued until 1998.   In the absence of such analysis, I decline to make a summary determination of the government's entitlement to interest and penalties from the date of transfer to the date of the Notice of Deficiency.   However, I will permit the government to submit another motion for determination of the total amount of liability in light of these authorities.   The Defendant may respond in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

Accordingly, it is ordered:

1.   The Motion for Summary Judgment (ECF No. 51) filed by Plaintiff United States of America is granted in part and denied in part.   The United States is entitled to judgment as a matter of law on Claim 3 of the Amended Complaint; Defendant is liable as transferee of the assets of CGCI for CGCI's tax deficiency, as determined by the Tax Court, and some award of interest and appropriate penalties. The motion is denied as to the full amount sought by the government ($3,671,110), without prejudice to the government's filing another motion to establish the amount to which it is entitled.

2.   Because Claim 3 resolves the issues, the Motion for Summary Judgment is

denied as moot as to the remaining claims in the Amended Complaint.

DATED at Denver, Colorado, on March 30, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge