IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-02446-PAB-CBS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES F. HOLMES,

    Defendant.

---

**ORDER ON MOTION FOR ENTRY OF JUDGMENT**

---

    This matter is before the Court on the Motion for Entry of Judgment [Docket No. 64] filed by plaintiff United States of America.  The government seeks entry of judgment in the amount of $4,941,722.94, the total amount of unpaid income tax liabilities and interest of the taxpayer entity of which defendant James F. Holmes was the sole shareholder, plus interest as of August 23, 2010.  Holmes concedes that judgment should enter in some amount, but disputes the amount sought by the government.  The Court has reviewed the parties' written arguments and the evidence submitted with the briefs and conclude that oral argument is not required.  For the reasons set forth below, the United States' motion will be granted in part and denied in part.

**I. BACKGROUND**[1]

    This is an action by the United States seeking to recover unpaid corporate tax

---

[1] The recitation of facts is taken from the Court's Order on Motion for Summary Judgment [Docket No. 62].

obligations from the corporation's sole shareholder.  The taxpayer was a company called Colorado Gas Compression, Inc. ("CGCI"), and the tax obligation is for tax years 1994, 1995, and 1996.

CGCI was formed as a Colorado corporation in 1977 and was administratively dissolved by the Colorado Secretary of State on July 31, 2005.  During the relevant time period, defendant Holmes was the sole shareholder and was an officer and director of CGCI.  It is undisputed that CGCI made distributions in cash to defendant in the following amounts:

    1995 - $902,000

    1996 - $1,851,704

    1997 - $240,000

    1998 - $572,809

    1999 - $75,694

    2000 - $1,189

    2002 - $27,714

    Total - $3,671,110

In 1997, the IRS notified CGCI of an audit of CGCI's 1994-1996 federal corporate income tax liabilities.   After the audit, the IRS issued a "Notice of Deficiency," dated July 28, 1998, to CGCI which stated that CGCI was liable for the following federal income tax deficiencies:

    1994 - $52,073

    1995 - $709,939

    1996 - $161,037

    Total - $923,049

Notice of Deficiency, Exh. A-9 to Def.'s Resp., Docket No. 59-9.  These tax liabilities were incurred as a result of CGCI's disposition of most or all of its assets.

    Defendant apparently contested this determination and the case was appealed to the Tenth Circuit.  *See Colorado Gas Compression, Inc. v. Comm'r*, 366 F.3d 863 (10th Cir. 2004).  Ultimately, the United States Tax Court issued a final determination confirming CGCI's tax liability in the amounts in the Notice of Deficiency.  *See Colorado Gas Compression, Inc., v. Comm'r*, Docket No. 17251-98 (T.C., July 20, 2005); Exh. A-10 to Def.'s Resp., Docket No. 59-10.  The United States contends that, with interest and penalties, the amount of CGCI's tax liability is as follows:

    1994 - $165,109.78

    1995 - $4,000,866.69

    1996 - $775,746.47

    Total - $4,941,722.94

Docket No. 51 at 4.  The United States filed this action on November 10, 2008 against defendant and asserted claims that defendant was liable for CGCI's tax liability as a transferee.  Before the filing of this case, the United States did not provide notice to defendant of his liability for CGCI's tax obligations as a transferee of CGCI's assets.

    In the Court's previous order resolving the issue of defendant's liability as a transferee of CGCI's assets, the Court determined that defendant was liable for CGCI's tax obligation pursuant to Colo. Rev. Stat. § 7-90-913(1)(b).  The Court permitted the government to file another motion on the question of whether defendant was also liable for the pre-judgment interest on CGCI's unpaid tax liability.  *See* Docket No. 62 at 12;

*see also* Docket No. 63. The government filed the present motion, which is fully briefed and ripe for disposition. *See* Docket Nos. 64, 69, 73.

## II. DISCUSSION

The first issue before the Court is the amount of transferred assets the government is entitled to claim. The government seeks the value of all assets transferred after 1994 (the first tax year of the deficiency) in the amount of $3,671,110. Defendant argues that only the distributions made between 1997 and 2002 should be considered because, before those transfers, CGCI still had sufficient assets to pay the taxes owed. Defendant relies on the language of *Ficor, Inc. v. McHugh*, 639 P.2d 385, 392 (Colo. 1982), which the Court cited in its previous order for the proposition that the dissolution statute's purpose is that "shareholders [should] not receive corporate assets on dissolution unless and until creditors have been paid or adequate provision for such payment has been made." Because there was still "adequate provision" for payment before 1997, defendant argues that the distributions made before that time should not be considered transferred assets recoverable by a creditor under Colo. Rev. Stat. § 7-90-913(1)(b). The Court disagrees.

The statement in *Ficor* concerns only the purpose of the statute; it does not substantively limit what assets are recoverable. Section 7-90-913(1)(b) permits a creditor with a claim to recover the assets distributed in liquidation to the owner of a dissolved entity. A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Colo. Rev. Stat. § 38-8-

102(3). The Court previously determined that all of the assets were distributed in liquidation. Moreover, the claim accrued prior to 1997. Accordingly, the amount should not be limited to those distributions occurring after 1997.

The next question is whether the United States is entitled to interest and, if so, during what periods. The United States argues that the Court should look to federal law to determine its entitlement to interest; defendant argues that state law determines the issue. As noted in the Court's previous order, the general rule is that, where the value of assets transferred exceeds the transferor's total tax liability, including penalties and interest, the transferee is liable for the entire amount of the deficiency and the amount of interest is prescribed by 26 U.S.C. § 6601. 14A MERTENS LAW OF FEDERAL INCOME TAXATION § 53:41 (2011) (citing, *inter alia*, *Lowy v. Comm'r Internal Rev.*, 35 T.C. 393 (T.C. 1960)). If the transferee receives less than the transferor's tax liability, state law determines the calculation of interest on the transferred assets. *Id*. The issue presented in this case is that the value of the assets received by defendant exceeded the tax liability of the transferor on the date of the transfer but not at the time that this suit was filed, when accrued interest had increased the amount owing significantly.

The government argues that where, as here, the value of the assets transferred exceeds the tax liabilities of the transferor *on the date of the transfer*, the interest charged on the deficiency is determined by federal law, specifically 26 U.S.C. § 6601, and accrues from the date of transfer. In support of this proposition, the government cites *Stansbury v. Comm'r*, 104 T.C. 486, 492 (1995), *aff'd Stansbury v. Comm'r*, 102 F.3d 1088 (10th Cir. 1996). A close reading of *Stansbury*, however, does not support

5

the government's position.  In *Stansbury*, the taxpayer entity owed approximately $58,263.86 as of 1986 in unpaid taxes and penalties for tax years 1980 to 1984.  104 T.C. at 488.  That same year, assets of the entity worth approximately $75,000 were transferred to the individual stockholders, leaving the entity without assets to pay the taxes owed.  *Id*. at 490.  The IRS issued a notice of transferee liability to the stockholders in January 1992.  *Id*. at 489.  With the addition of interest, however, the amount owed in 1992 greatly exceeded the value of the assets transferred in 1986.[2] The *Stansbury* case, therefore, is similar to the situation presented here in that the amount owed exceeded the value of the transferred assets at the time of the notice to the transferee.  *Stansbury* suggests that the relevant date for determining whether the transferred assets exceed the liability owed is when the notice or demand of transferee liability is provided, not when the assets are transferred.  Therefore, because the value of the assets transferred to defendant here was less than CGCI's total tax liabilities as of the date of transferee liability notice to defendant (the date this suit was filed), federal law does not entitle the United States to interest.  Moreover, the United States has not asserted a claim under federal law in this case, but instead has chosen to proceed under state law claims.

Consistent with the general rule previously noted and consistent with *Stansbury*, which affirmed the Tax Court's application of Colorado law, *see* 102 F.3d at 1092, the Court determines that the United States' entitlement to interest is determined by

---

[2]According to the Tax Court's opinion, the interest sought by the Commissioner in the proceedings was $58,263.86 in tax deficiencies and penalties and $79,123.96 in interest, for a total of $137,387.82.

application of Colorado law.

*Stansbury* affirmed the Tax Court's application of Colo. Rev. Stat. § 5-12-102 to determine the United States' entitlement to pre-judgment interest in that case. *Id.* The Court finds that, for the same reasons, § 5-12-102 applies here.[3] This is consistent with long-standing principles established in *Estate of Stein v. Comm'r*, 37 T.C. 945, 961 (1962), which noted that "where . . . the transferred assets are insufficient to pay the transferor's total liability, interest is not assessed against the [tax] deficiencies because the transferee's liability for such deficiencies is limited to the amount actually transferred to him. Interest may be charged against the transferee only for the use of the transferred assets, and since this involves the extent of transferee liability, it is determined by State law." Therefore, "where a transferee receives assets insufficient to satisfy the transferor's tax liabilities, determination of the existence, starting date, and rate of interest upon the retention of those assets prior to demand therefor is controlled by State law." *Id*. Section § 5-12-102(1)(a) provides for interest to creditors when

---

[3]Defendant argues that the statute under which the Court determined that defendant was liable to the United States as a transferee, Colo. Rev. Stat. § 7-90-913(1)(b), makes no mention of interest and limits a transferee's liability "for all claims" to the total value of assets "determined at the time of distribution." Docket No. 69 at 7-8. As a result, the defendant claims that the more specific provisions of § 7-90-913(1)(b) preclude the general statute found at § 5-12-102. The Court disagrees. The Court does not interpret § 7-90-913(1)(b) so narrowly as to preclude an award of interest pursuant to § 5-12-102, which awards interest on amounts wrongfully withheld. Although defendant points out that § 7-90-913(1)(b) limits obligations to the amount of distributed assets, defendant fails to cite any authority for the proposition that, if those amounts are wrongfully withheld, § 5-12-102 is inapplicable. The defendant also argues that, since § 7-90-913 was enacted in 2006, it makes the ruling of *Stansbury* applying § 5-12-102 inapplicable to these facts. The Court is unpersuaded by that argument. A version of § 7-90-913(1)(b) existed at the time that *Stansbury* was decided, namely Colo. Rev. Stat. § 7-114-108, but was not mentioned by the Tenth Circuit or the Tax Court. *See* Colo. Rev. Stat. § 7-114-108(1)(b).

money or property "has been wrongfully withheld . . . from the date of wrongful withholding to the date of payment or to the date judgment is entered."  The Court inquired of the parties that, if the United States sought interest under Colo. Rev. Stat. § 5-12-102(1)(a), what facts suggested that the defendant's conduct was wrongful at various times.  In particular, the Court was concerned about how defendant's conduct could be considered wrongful before 1998, which was before the IRS notified either defendant or CGCI of the possibility that additional taxes could be owed.  The government appears to concede that defendant's conduct in continuing to liquidate the company without providing for payment of the tax liability would be wrongful only after the receipt of the notice of CGCI's potential tax liability, i.e., on or around July 28, 1998.

As of that date, however, defendant was aware, as CGCI's sole shareholder, of the Notice of Deficiency and, upon receipt of the Notice of Deficiency, the purpose of § 5-12-102, i.e., "to discourage a person responsible for payment of a claim from delaying payment," *Stansbury*, 102 F.3d at 1093, was implicated.  As a result, the Court concludes that defendant should not be responsible for interest that accrued on the underlying tax liability before July 28, 1998.  Upon receiving the Notice of Deficiency, defendant had received transfers of assets exceeding the underlying tax liability.  From that date, therefore, defendant should be responsible for paying interest on the underlying tax liability, i.e., $923,049.00, until entry of judgment in this case.

That leaves the issue of whether and to what extent defendant should be responsible for the difference between $923,049.00 plus the accrued interest from July 28, 1998 and the total tax liability owed by CGCI as of the eventual entry of judgment in this matter.  If defendant had received no additional distributions from CGCI after July

28, 1998, the answer would be simple: defendant would have no additional obligation to the United States. But the record indicates that defendant received additional distributions after receiving the Notice of Deficiency. The Court finds that such distributions were clearly wrongful. By 1998, CGCI had disposed of most of its assets and had little, if any, ongoing business activity. *See Stansbury*, 102 F.3d at 1093 (agreeing that petitioners' transfer of assets in light of their "knowledge of . . . [the] tax liabilities and their control over the company's actions" was "wrongful"). Because defendant "had use of the assets," the Court finds that it may well be "fair that [defendant] pay statutory interest" on the post-July 28, 1998 transfers in light of the outstanding tax obligation. *Id.*

If, after payment of $923,049.00 plus interest from July 28, 1998, the total post-July 28, 1998 distributions plus interest from the dates of the respective distributions are greater than the balance remaining on the total tax liability to the United States, defendant is responsible for the remaining balance. If, however, the post-July 28, 1998 distributions plus interest are less than the balance, defendant is only responsible for the total amount of those distributions plus interest pursuant to § 5-12-102 from the dates of the respective distributions until entry of judgment in this case. It does not appear, however, that the United States provided the specific dates on which the post-July 28, 1998 transfers were made to defendant. Therefore, there is insufficient evidence in the record for the Court to make a determination in that regard.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Entry of Judgment [Docket No. 64] filed by plaintiff United States of America is granted in part and denied in part. It is further

**ORDERED** that, upon entry of final judgment in this case, judgment shall enter in favor of the United States and against defendant in the amount of $923,049.00 plus interest on that amount pursuant to Colo. Rev. Stat. § 5-12-102(1)(a) from July 28, 1998 until entry of judgment. It is further

**ORDERED** that, within seven days of entry of this order, the United States shall file a renewed motion for entry of judgment which includes the dates of the post-July 28, 1998 distributions, a calculation of interest on each distribution pursuant to Colo. Rev. Stat. § 5-12-102(1)(a), and an updated calculation of the total tax liability. Defendant may file a response within seven days thereafter. It is further

**ORDERED** that judgment shall not enter until further order of the Court.

DATED February 24, 2012.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge